IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

NICHOLAS SAMPSON,

Plaintiff,

v.

INVESTIGATOR WILLIAM LAMBERT, in his official and individual capacities, INVESTIGATOR CHARLES O'CALLAGHAN, in his official and individual capacities, SERGEANT SANDY WEYERS, in her official and individual capacities, CASS COUNTY SHERIFF'S OFFICE, a Nebraska political subdivision, DOES 1-10, in their official and individual capacities, and INVESTIGATOR EARL SCHENCK, in his official and individual capacities, DOUGLAS COUNTY SHERIFF'S OFFICE, DAVID W. KOFOED, in his official and individual capacities,

Defendants.

8:07CV155

MEMORANDUM AND ORDER

This matter is before the court on motions for summary judgment filed by defendants William Lambert and Charles O'Callaghan, Filing No. 373, and Earl Schenck and Sandra Weyers, Filing No. 375. Also pending is the above-listed defendants' motion to strike and objections to the plaintiff's evidence, Filing No. 416.[1] This is an action for deprivation of constitutional rights and conspiracy under 42 U.S.C. §§ 1983 and 1985.

[1]Defendants object to much of the evidence submitted by the plaintiff in opposition to the motion to dismiss on grounds of relevance and materiality. Specifically, they allege that evidence relating to defendant David Kofoed's conduct is not relevant because he has not filed a motion for summary judgment. The court finds that argument specious. Evidence of Kofoed's involvement is relevant to issues of conspiracy and to the issue of "conscience-shocking" behavior. Let it suffice to say that the court did not consider irrelevant evidence in making its determination. Accordingly, the court finds the defendants' motion to strike should be denied.

This action involves the murders of Sharmon Stock and Wayne Stock on April 17, 2006, in Murdock, Nebraska, and the subsequent joint investigation by the Cass County Sheriff's Office, the Nebraska State Patrol and the Douglas County Sheriff's Office, Crime Scene Investigation Division. The plaintiff in this action is Nicholas Sampson. Sampson is the cousin of Matthew Livers, the nephew of the murder victims.[2] At the time of the incident, defendants Lambert and O'Callaghan were both employed by the Nebraska State Patrol as investigators. Earl Schenck was employed by Cass County Sheriff's Office as a detective and Sandra Weyers was employed by Cass County Sheriff's Office as Schenck's supervisor. Defendant Kofoed was employed by Douglas County Sheriff's Office as the Commander of its Crime Scene Investigation Division. The Douglas County Crime Scene Investigation Division agreed to provide forensic investigation services to the Cass County Sheriff's Office by agreement.

In his amended complaint, the plaintiff alleges violations of his rights under the Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the U.S. Constitution. He contends he was wrongfully arrested and incarcerated for the murders. Essentially, he alleges that defendants engineered a false case against him, interviewed him in custody without *Miranda* warnings, coerced a confession from his cognitively impaired co-defendant, Matthew Livers, using threats, trickery and intimidation, withheld evidence of the subsequent recantation of the confession, coerced statements from other individuals, contaminated the confessions of the suspects later convicted of the murders, withheld evidence from prosecutors, and made misrepresentations to defense counsel and to the court.

---

[2]Matthew Livers also has a civil rights action pending in this court, *Livers v. Schenck*, Case No. 8:08CV107.

The plaintiff alleges that defendants Cass County Sheriff's Office, Douglas County Sheriff's Office, Weyers, Lambert, O'Callaghan, and Kofoed are liable as supervisors because they established policies or practices that encouraged, endorsed, and rewarded their agents and employees for violating his constitutional rights. He also alleges that defendant Cass County Sheriff's Office, through its final policymaker, the Cass County Sheriff, maintained policies and practices that deprived the plaintiff of constitutional rights, including failing to properly train and supervise officers; using interrogation techniques that are likely to result in false and unreliable information from suspects and witnesses; suppressing, destroying, or concealing exculpatory evidence; failing to discipline officers for transgressions of criminal suspects' constitutional rights; procuring unreliable evidence and falsifying and fabricating evidence without regard to whether their policies, practices and customs might result in the conviction of innocent persons; and were deliberately indifferent to violations of criminal suspects' rights.

The plaintiff further alleges that defendant Kofoed and other Douglas County Sheriff's Office Crime Scene Investigation Division employees, under Kofoed's direction, collected and processed physical evidence at the crime scene, and that defendant Kofoed knowingly falsified his reports relating to blood evidence with the intent to impede, obstruct or influence the plaintiff's defense.

Defendants Schenck and Weyers argue that they are entitled to qualified immunity. They assert that their actions did not violate the plaintiff's clearly established constitutional rights. They argue that county sheriffs and deputies have no authority to release criminal suspects once they have been ordered held by a court or to determine what charges will be filed or dropped against criminal suspects under Nebraska law. They also argue that

the plaintiff's allegations relating to the withholding of exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 86-87 (1963), are not cognizable unless a defendant has been convicted. Further, they argue that the plaintiff lacks standing to challenge Matthew Livers's confession. Finally, they assert there is no evidence of a conspiracy.

Defendants Lambert and O'Callaghan assert that the claims against them in their official capacities and for monetary damages are barred by the Eleventh Amendment. They also assert that they are entitled to qualified immunity. In connection with that argument, they contend that the evidence shows that they had arguable probable cause to arrest the plaintiff. Defendant O'Callaghan additionally asserts that he had no contact with Sampson and had a limited role in the homicide investigation that consisted only of assisting in one consensual search, preparing three search warrants at the direction of the prosecutor, conducting interviews in Nebraska and Texas, and administering polygraph examinations to Matthew Livers and others. Defendant Lambert also argues that his involvement in the investigation was limited and argues that, although he and Detective Schenck interviewed Matthew Livers, he has only spoken to the defendant once. Lambert asserts that he did not participate in Sampson's arrest, nor did he have any conversations with the prosecutor, Nathan Cox, or other Cass County Attorney's Office employees, regarding Sampson's arrest. The defendants have jointly submitted an index of evidence in support of their motions. Filing No. 378.

**FACTS**

The parties have submitted voluminous evidence in support of their respective positions. *See* Filing No. 378, Joint Index of Evidence (Evid.); Filing No. 399, Plaintiff's Index of Evid., Exs. 1 - 41; Filing No. 401, Index of Evid., Attachment, Ex. 42 (Parts 1-4);

Filing No. 402, Index of Evid., Ex. 42 (Part 5) to Ex. 46; Filing No. 407, Index of Evid. (Supplemental), Ex. 1; Filing No. 418, Separate Index of Reply Evid. The evidence includes transcripts and videotapes of interviews and interrogations of Matthew Livers and others, police reports, time sheets, deposition transcripts, court records and exhibits, internal investigation reports, DVDs, polygraphs, and polygraph reports. The court has reviewed enough of the evidence to determine that there are genuine issues of material fact that preclude summary judgment in this case.

The evidence establishes that defendant David Kofoed was charged and convicted in Cass County, Nebraska, District Court of tampering with physical evidence, a class IV felony, in connection with the Stock murder investigation. Filing No. 402, Index of Evid., Ex. 43, Information (Doc # 402-3, Page ID # 8619-10); Ex. 44, Judgment of Conviction (Doc # 402-4 , Page ID # 8622-23). The plaintiff has produced evidence that defendants Schenck and Lambert made threats, including threats of harm to his family, misrepresented evidence, and used trickery during the Livers interview. Filing No. 399, Index of Evid., Ex. 30, Deposition of Earl Schenck ("Schenck Dep.") at 261, 271-84 (Doc # 399-31, Page ID # 6507, 6509-12); Filing No. 399, Ex. 1, Transcript of Matthew Livers's interview/interrogation at 102-105 (Doc # 399-1, Page ID # 4147-50); Filing No. 409, Index of Evid., Ex. 1, Affidavit of Matthew Livers at 2 (Doc # 409-1, Page ID # 8653).

The evidence shows genuine disputes on numerous other issues. For example, there is a dispute about Matthew Livers's mental capacity and the defendants' awareness of that mental capacity. *See* Filing No. 399, Ex. 31, Schenck Dep. at 151-52 (Doc # 399-31, Page ID # 6479); Ex. 34, Deposition of Charles O'Callaghan ("O'Callaghan Dep.") at 105-07, 184 (Doc # 399-34, Page ID # 6781, 6800). There is evidence of numerous

improprieties in the handling of physical evidence. *Id.*, Ex. 23, Deposition of Tim Dunning ("Dunning Dep.") at 251-52 (Doc # 399-23, Page ID # 5688). There is also a dispute regarding the receipt and timing of discovery or exculpatory materials. Filing No. 402, Index of Evid., Ex. 45, Affidavit of Jerry Soucie at 3-5 (Doc # 402-5, Page ID # 8626-28); Filing No. 399, Index of Evid., Ex. 32, Deposition of Jerry Soucie ("Soucie Dep.") at 43-45 (Doc # 399-32, Page ID # 6585-87). There is also evidence that suggests that Douglas County Sheriff's Office employees were aware of administrative lapses by defendant Kofoed. *Id.*, Ex. 23, Dunning Dep. at 229 (Doc #399-23, Page ID # 5683). The plaintiff has also produced evidence of numerous meetings between the defendants. *Id.*, Ex. 34, O'Callaghan Dep. 145-48 (Doc # 399-34, Page ID # 6791); Ex. 21, Kofoed Dep. at 204-210 (Doc # 399-21, Page ID # 5502-08); Ex. 26, Deposition of Charles Phillips at 13-15, 89-91 (Doc # 399-26, Page ID # 5833, 5852). Evidence that calls into question the credibility of defendant O'Callaghan has also been submitted. *Id.*, Ex. 34, O'Callaghan Dep. at 12-28 (Doc # 399-34, Page ID # 6757-61). There is also evidence that the fact that the plaintiff recanted his confession was concealed from the defense and the prosecutor. *Id.*, Ex. 32, Soucie Dep. at 35 (Doc # 399-32, Page ID # 6583); Ex. 40, Deposition of Nathan Cox ("Cox Dep.") at 140-45 (Doc # 399-40, Page ID # 7373-75). Evidence also shows that the behavioral profiler who provided crime analysis was never informed that the confession had been recanted. *Id.*, Ex. 27, Deposition of Gary Plank at 43 ((Doc # 399-27, Page ID # 5951). Defendant Weyers, the supervisor, testified by deposition that she knew the confession did not match the details of the crime scene. *Id.*, Ex. 33, Deposition of Sandra Weyers ("Weyers Dep.") at 250-51 (Doc # 399-33, Page ID # 6707). The plaintiff has presented evidence that there was no evidence, other than Livers's confession that

implicated Sampson. *Id.* at 276 (Doc # 399-33, Page ID # 6713); Ex. 37, Deposition of William Lambert at 131-32 (Doc # 399-37, Page ID # 7013-14). Additionally, there are inconsistencies and contradictions in the evidence that are too numerous to list.

## DISCUSSION

### A. Law

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.* In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

The law imposes civil liability on any person who "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law. *Pearson v. Callahan*, — U.S. —, —, 129 S. Ct. 808, 823 (2009). "Qualified immunity balances two important interests–-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* at 815. "Qualified immunity—which shields Government officials

'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights,'—is both a defense to liability and a limited 'entitlement not to stand trial or face the other burdens of litigation.'" *Ashcroft v. Iqbal*, — U.S.—, —, 129 S. Ct. 1937, 1945-46 (2009) (quotations omitted). The defense "is usually raised by a motion for summary judgment after a limited amount of discovery has been conducted to determine whether defendants acted objectively in a reasonable manner and whether a plaintiff's rights were clearly established at the time of the alleged deprivation." *Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997). The qualified immunity defense is not available in an action to enjoin future conduct or in an action against a municipality. *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998).

When summary judgment is sought on a qualified immunity defense, the court inquires whether the party opposing the motion has raised any triable issue barring summary adjudication. *Ortiz v. Jordan*, — U.S. —, —,131 S. Ct. 884, 889 (2011). To overcome the defendants' qualified immunity claims, a plaintiff must show that: "(1) the facts, viewed in the light most favorable to the plaintiff[s], demonstrate the deprivation of a constitutional . . . right; and (2) the right was clearly established at the time of the deprivation." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) (quoting *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)); *Wilson v. Lawrence County*, 260 F.3d 946, 951 (8th Cir. 2001). For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987): *Wilson*, 260 F.3d at 951 ("To be clearly established, there need not be a case decided on all fours with the present factual circumstances, rather, it need only be

apparent from pre-existing law that the conduct is unlawful."). Courts may decide which qualified immunity prong to address first, "in light of the circumstances in the particular case at hand" in the exercise of sound discretion. *Pearson*, 555 U.S. at —, 129 S. Ct. at 818) (abrogating former mandatory two-step procedure requiring courts to first address the "constitutional question" before turning to the "qualified immunity question," the first inquiry being "whether a constitutional right would have been violated on the facts alleged"); *Baribeau*, 596 F.3d at 474 (finding it most beneficial to first address whether the facts, when considered in the plaintiffs' favor, establish a violation of the plaintiffs' constitutional rights).

"Whether a given set of facts entitles the official to summary judgment on qualified immunity grounds is a question of law," however, "if there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment." *Turney v. Waterbury*, 375 F.3d 756, 759-760 (8th Cir. 2004) (quotations omitted); *see Iqbal*, 129 S. Ct. at 1947 (noting that "determining whether there is a genuine issue of material fact at summary judgment is a question of law, but it is a legal question that sits near the law-fact divide"). A successful claim of qualified immunity will generally "present 'purely legal' issues capable of resolution 'with reference only to undisputed facts.'" *Ortiz*, 131 S. Ct. at 892 (noting that "[c]ases fitting that bill typically involve contests not about what occurred, or why an action was taken or omitted, but disputes about the substance and clarity of pre-existing law"); *see, e.g., Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) (stating that "typically, the issue is whether the federal right allegedly infringed was clearly established"); *Johnson v. Jones*, 515 U.S. 304, 313-18 (reaffirming that summary judgment determinations are appealable when they resolve a dispute concerning

an "abstract issu[e] of law" relating to qualified immunity, not when the record raises genuine issues of fact); *Pearson*, 555 U.S. at —, 129 S. Ct. at 819 (noting that the qualified immunity procedure is of little use in fact-bound cases).

Even if a defendant frames an issue in terms of qualified immunity, the court should determine whether he is simply arguing that the plaintiff offered insufficient evidence to create a material issue of fact. *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008). The party asserting immunity always has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences. *Id.* If there is a genuine dispute concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment. *Id.* The threshold question then is whether, viewed in the light most favorable to the plaintiff, the facts demonstrate that the defendants' conduct violated a constitutional right. *Id.*

It has been clearly established for decades that the Due Process Clause of the Fifth and Fourteenth Amendments protects against intentional or bad faith failure to disclose exculpatory material. *Villasana v. Wilhoit*, 368 F.3d 976, 980 (2004) (damages under section 1983 can be recovered from law enforcement officers for due process claims for intentional or bad faith failure to disclose *Brady* material to the prosecutor or to the defense); *see also* *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *Parish v. City of Chicago*, 594 F.3d 551, 554 (7th Cir. 2009) (recognizing that a § 1983 plaintiff has a "due process claim in the original sense of that phrase" in that he did not receive a fair trial if the prosecutors withheld material exculpatory evidence); *Jones v. Chicago*, 856 F.2d 985, 992 (7th Cir.1988) (affirming verdict in civil rights conspiracy for "railroading" a suspect); *Jean*

*v. Collins*, 221 F.3d 656, 663 (4th Cir. 2000) (en banc) (concluding that police who deliberately withhold exculpatory evidence, and thus prevent the prosecutors from complying with *Brady*, violate the due process clause); *Brown v. Miller*, 519 F.3d 231, 238 (5th Cir. 2008) (finding that the law was sufficiently clear in 1984 that a state crime lab technician would have known that suppression of exculpatory evidence would violate a defendant's rights). Further, the Eighth Circuit has clearly extended liability for concealing exculpatory evidence to all law enforcement officials. *White v. McKinley*, 519 F.3d at 814 (upholding a § 1983 judgment against a police officer who was alleged to have concealed exculpatory evidence).

The Eighth Circuit Court of Appeals has similarly recognized that wrongful pretrial detention may amount to a constitutional violation. *See Kennell v. Gates,* 215 F.3d 825, 828 n.4 (8th Cir. 2000) (holding that police officer's deliberate indifference to mistaken identification that caused wrongful pretrial detention constituted a violation of substantive due process). It has also been clearly established for many years that a person has a right under the Fourth Amendment not to be arrested without probable cause. *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996). The Fourth Amendment requires a truthful factual showing sufficient to constitute probable cause. *Hedges v. Poletis*, 177 F.3d 1071, 1074 (8th Cir. 1999); *see also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir.1997) ("When a police officer creates false information likely to influence [a factfinder's] decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial. . . ."); *Stemler v. City of Florence,* 126 F.3d 856, 872 (6th Cir. 1997) (finding, under law that was clearly established in 1994, that an officer violates the right to due process by knowingly fabricating evidence); *Burk v. Beene*, 948 F.2d 489,

494 (8th Cir.1991) (relying on information known to be false in support of an application for an arrest warrant is not objectively reasonable).

In the wrongful arrest context, officers are entitled to qualified immunity "if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable." *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008). The determination is whether the officers had "arguable probable cause" to arrest. *Baribeau*, 596 F.3d at 465 ("'[t]he issue for immunity purposes is not probable cause in fact but arguable probable cause," that is, whether the officer should have known that the arrest violated plaintiff's clearly established right."); *Burk*, 948 F.2d at 494 (relying on information known to be false in support of an application for an arrest warrant fails to establish probable cause).

A defendant's good faith or bad faith is irrelevant to the qualified immunity inquiry. *Id.* The standard is one of "objective reasonableness." *Malley v. Briggs*, 475 U.S. 335, 344 (1986). The question is whether a reasonably well-trained officer in the defendant's position would have known that evidence failed to establish probable cause. *Burk*, 948 F.2d at 494 (noting that if material information was known by her to be false, or there was no reasonable basis for believing it, it was not objectively reasonable for an officer to use the information to obtain an arrest warrant).

An intentional or reckless failure to investigate other leads also offends a defendant's due process rights. *See Wilson v. Lawrence County*, 260 F.3d at 957. The liberty interest at stake in such a claim is the "interest in obtaining fair criminal proceedings." *Id.* at 956 n.8. The test to determine whether state officers' actions violate this protected liberty interest is whether those actions shock the conscience. *Id.* at 956; *Moran v. Clarke*, 296 F.3d 638,

651 (8th Cir.2002) (en banc) (Bye, J., concurring and writing for a majority on the issue) (noting that in order to establish a substantive due process violation, a plaintiff must demonstrate that a fundamental right was violated and that the conduct shocks the conscience).

Whether the alleged conduct shocks the conscience is a question of law. *Terrell v. Larson*, 396 F.3d 975, 981 (8th Cir. 2005) (en banc). Where state officials "have the opportunity to deliberate various alternatives prior to selecting a course of conduct, such action violates due process if it is done recklessly." *Wilson*, 260 F.3d at 956. The recklessness standard is appropriate in a post-arrest investigation where officers have the "the luxury of unhurried judgments and repeated reflections." *Id.* The recklessness standard normally contains a subjective component similar to criminal recklessness. *Id.* at 956 n.9. Thus, to establish a violation of substantive due process, a plaintiff must show that state actors intentionally or recklessly failed to investigate, thereby shocking the conscience. *See id.* at 955-56.

Mere negligent failure to investigate does not violate substantive due process. *Moran*, 296 F.3d at 655. Likewise, allegations of gross negligence do not give rise to a constitutional violation. *Id.* (holding that an officer's negligent failure to investigate inconsistencies or other leads is insufficient to establish conscience-shocking misconduct); *Clemmons v. Armontrout*, 477 F.3d 962, 966 (8th Cir. 2007) (rejecting the contention that failure to investigate another suspect shocked the conscience because there was "no explanation for why these actions constitute recklessness as opposed to mere negligence"); *but see Wilson*, 260 F.3d at 957 (stating that a failure to investigate other leads when faced with an involuntary confession and no reliable corroborating evidence "could easily be

described as reckless or intentional."). A motion for summary judgment based on qualified immunity should be denied where the plaintiff has presented evidence, if proven at trial, of reckless or intentional conduct. *Wilson*, 260 F.3d at 957. The following circumstances have been held to indicate reckless or intentional failure to investigate that shocks the conscience: (1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence. *See Amrine v. Brooks*, 522 F.3d 823, 833-35 (8th Cir. 2008) (summarizing cases that address the failure to investigate as a substantive due process violation).

The Fifth Amendment right to be free from self-incrimination and the Fourteenth Amendment right to due process are violated when law enforcement officers coerce an involuntary false confession from a suspect. *Wilson*, 260 F.3d at 952 (noting that "[t]he Supreme Court has long held 'that certain interrogation techniques, either in isolation or *as applied to the unique characteristics of a particular suspect*, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment.'") (emphasis in original). It was also well established as early as 1960 that psychological methods designed to overbear a suspect's will results in a violation of the constitution. *See id.* A claim that law enforcement officers knowingly used false or unreliable evidence such as a coerced statement against a person in criminal proceedings is also cognizable as a due process claim. *Id.* at 954.

To prevail on a claim of civil rights conspiracy, a plaintiff must establish that: (1) the defendant conspired with others to deprive the plaintiff of constitutional rights; (2) at least

one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured the plaintiff. *White*, 519 F.3d at 814. The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim. *Id.* The plaintiff need not show that each participant knew the precise contours of the illegal plan, but need only provide evidence sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights. *Id.* at 816. Because "the elements of a conspiracy are rarely established through means other than circumstantial evidence, . . . summary judgment is only warranted when the evidence is so one-sided as to leave no room for any reasonable difference of opinion as to how the case should be decided." *Id.* (quoting *Westborough Mall, Inc. v. City of Cape Girardeau*, 693 F.2d 733, 743 (8th Cir. 1982)). The conspiracy claim should not be taken from the jury if there is evidence from which a reasonable juror could find that the parties reached a "meeting of the minds to withhold exculpatory evidence." *Id.*

"Respondeat superior or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (quotations omitted). To establish personal liability of a supervisory defendant, specific facts of personal involvement in, or direct responsibility for, a deprivation of constitutional rights must be shown. *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006); *Iqbal*, 129 S. Ct. at 1949 (noting that the term "supervisory liability" is a misnomer in the context of § 1983 litigation, each government official is only liable for his or her own misconduct). Longstanding Eighth Circuit precedent holds that a supervisor can

be liable for a constitutional violation if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation. *Parrish v. Ball*, 594 F.3d 993, 1001 n.1 (8th Cir. 2010). Further, a supervisor may be held individually liable under § 1983 if a failure to properly supervise the offending employee caused a deprivation of constitutional rights. *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. *Id.* This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation. *Id.* A failure to train that is likely to result in constitutional violations has been held to amount to deliberate indifference. *See Gregory v. City of Louisville,* 444 F.3d 725, 754 (6th Cir. 2006) (holding that "widespread officer ignorance on the proper handling of exculpatory materials would have the 'highly predictable consequence' of due process violations").

A municipality may be held liable under § 1983 for a rights violation when either the municipality had an unlawful policy or practice that caused the rights violation, or a municipal "policymaker" directly caused the rights violation. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Yellow Horse v. Pennington County*, 225 F.3d 923, 928 (8th Cir. 2000). A municipality can be held "liable under 42 U.S.C. § 1983 for constitutional violations resulting from its failure to train municipal employees." *City of Canton*, 489 U.S. at 380; *Turney*, 375 F.3d at 762 (noting that "failure to properly train employees is one way in which an entity can exhibit deliberate indifference toward the rights of others.").

States and arms of the state possess sovereign immunity from suits. *Alden v. Maine,* 527 U.S. 706, 713 (1999); *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) (holding that

a claim against a highway patrol officer in his official capacity is a claim against the state highway patrol which is entitled to sovereign immunity as an arm of the state). The Supreme Court "has repeatedly refused to extend sovereign immunity to counties." *Northern Ins. Co. of New York v. Chatham County, Ga.*, 547 U.S. 189, 193 (2006). The only immunities available to a defendant in an official-capacity action are those that the governmental entity possesses. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). However, if a state official is named as a defendant instead of the state or one of its agencies, the state officer is subject to suit under the doctrine announced in *Ex Parte Young*, 209 U.S. 123, 159-60 (1908). *Nix v. Norman*, 879 F.2d 429, 432 (8th Cir. 1989); *see also* *Larson v. Kempker*, 414 F.3d 936, 939-40 & n.3 (8th Cir. 2005) (dismissal on ground of immunity not warranted where the defendants were sued in individual capacity). Although the Eleventh Amendment bars suits by private parties "seeking to impose a liability which must be paid from public funds in the state treasury," courts may order injunctions to prevent or to remedy a state officer's conduct and "may also award a wide range of prospective relief 'which serves to bring an end to a present violation of federal law . . . even though accompanied by a substantial ancillary effect on the state treasury.'" *Larson*, 414 F.3d at 940 (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).

**B. Analysis**

The court finds the materials submitted in support of and in opposition to the motions for summary judgment show that there are disputes of fact on many material issues. There has been a showing that evidence was fabricated. The extent of these defendants' knowledge of, or complicity in, that act is a question of fact for the jury. The plaintiff has also produced evidence that the defendants concealed evidence and that defendant law

enforcement officers subjected suspects to coercive questioning in order to produce false evidence against the plaintiff. Further, there is evidence that suggests the defendants provided incomplete and misleading information to the prosecutor. Viewing the evidence in the light most favorable to the plaintiff, the court finds that the plaintiff has presented evidence from which a reasonable juror could infer that the defendants intentionally, or in bad faith, failed to disclose exculpatory material or deliberately withheld exculpatory information that prevented the prosecutor from complying with obligations under *Brady v. Maryland*.

There is also evidence that, if believed, would tend to show that a reasonably well-trained officer would have known that there was no arguable probable cause to arrest the plaintiff. Evidence that the defendants failed to investigate other leads has also been produced. Whether that conduct was merely negligent or rose to the level of recklessness is also a question for the jury.

Moreover, there is evidence of a coerced confession and failure to inform the prosecutor of a recantation. There is some dispute about whether or when the defendants knew or should have known of the plaintiff's mental deficiencies. The court cannot state as a matter of law that the facts, viewed in the light most favorable to the plaintiff, do not shock the conscience so as to amount to a due process violation.

The individual defendants are not entitled to qualified immunity for their actions because the plaintiff has alleged the deprivation of federally-protected rights that were clearly established at the time of the investigation. The plaintiff has refuted the affidavits and depositions propounded by the defendants in support of their motions with evidence that challenges the credibility of the witnesses. There is considerable dispute about whether and

when the defendants became aware of evidence or information that cleared the plaintiff and whether the training and/or supervision of the investigating officers was adequate. The plaintiff has submitted evidence from which a jury could infer that Dunning's failure to train, supervise, and discipline the employees of the Douglas County Crime Scene Investigation Division, including defendant Kofoed, contributed to the evidence fabrication and resulted in the concealing of evidence from the plaintiff, his counsel and the prosecutor. The inconsistencies in the voluminous materials submitted by both parties shows that the resolution of these issues involve credibility assessments. Accordingly, the court finds that the evidence on the whole shows there are genuine issues of material fact.

The qualified immunity defenses asserted by the defendants do not present "neat abstract issues of law," but involve disputes on material predicate facts. The pre-existing law governing seizures and arrests under the Fourth Amendment and interrogations and disclosure of exculpatory materials under the Fifth Amendment is clearly established and not generally in dispute. What is at issue is whether the actions of these defendants rose to the level of unconstitutional conduct.

The court further finds that Nebraska State Patrol Officers William Lambert and Charles O'Callaghan, are entitled to sovereign immunity in their official capacities. That finding is of little consequence, however, since they have also been sued in their individual capacities. Similarly, the plaintiff's action seeks injunctive relief and therefore is not subject to dismissal the ground of sovereign immunity.

The court rejects the defendants' arguments that the plaintiff has no claim for a constitutional violation because he was not subjected to a trial as contrary to law. Further, the prosecutor's decision to charge the plaintiff will not shield the defendants from liability for

misleading the prosecutor if the information influenced the prosecutor's decision to charge him. Accordingly,

IT IS ORDERED:

1. Defendants William Lambert's and Charles O'Callaghan's motion for summary judgment (Filing No. 373) is granted with respect to claims against them in their official capacities and denied in all other respects;

2. The plaintiff's claims against defendants William Lambert and Charles O'Callaghan in their official capacities are dismissed;

3. Defendants Earl Schenck's and Sandra Weyers's motion for summary judgment (Filing No. 375) is denied.

4. Defendants' motion to strike and objections to the plaintiff's evidence (Filing No. 416) is denied.

DATED this 28th day of March, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.