IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NICHOLAS SAMPSON,<br><br>                Plaintiff,<br><br>    v.<br><br>EARL SCHENCK, et al.,<br><br>                Defendants.<br>_____<br><br>MATTHEW LIVERS,<br><br>                Plaintiff,<br><br>    v.<br><br>EARL SCHENCK, et al.,<br><br>                Defendants. | **8:07CV155**<br><br>**MEMORANDUM AND ORDER**<br><br><br><br><br><br>**8:08CV107**<br><br>**MEMORANDUM AND ORDER** |

      This matter is before the court on defendant Douglas County Sheriff's Office's motion for summary judgment, Filing No. 665, and defendant William Lambert's and Charles O'Callaghan's (hereinafter, "the Nebraska State Patrol (NSP) defendants") motion for partial summary judgment, Filing No. 668, in *Sampson v. Schenck*, No 8:07CV155; and on defendant Douglas County's motion for summary judgment, Filing No. 540, the NSP defendants' motion for partial summary judgment, Filing No. 543, and defendant Cass County's motion for summary judgment, Filing No. 548, in *Livers v. Schenck*, No. 8:08CV107.

      These actions involve the arrests of plaintiffs Sampson and Livers for allegedly murdering Livers's aunt and uncle, Sharmon and Wayne Stock. The plaintiffs seek

damages from Cass County, investigators from the Cass County Sheriff's Office and Nebraska State Patrol, and convicted former Douglas County Crime Scene Investigator David Kofoed for the injuries they sustained as a result of the false charges. The plaintiffs contend that the defendants, individually and in conspiracy, detained them without probable cause; conducted a coercive, conscience-shocking interrogation of Livers that caused him to confess falsely to the crimes; and thereafter fabricated evidence and coerced witnesses in an attempt to preserve the wrongful charges. Livers alleges that Cass County failed to properly train defendants Schenck and Weyers. Ultimately, two other people, Jessica Reid and Gregory Fester, confessed to the crimes and were convicted and sentenced to life in prison.

## I. Sampson case

The court is informed that plaintiff Sampson and defendants Lambert, O'Callaghan and Douglas County have settled. The settlement renders the motions for summary judgment in the *Sampson* case moot.

## II. Livers case

In the Livers case, Douglas County's motion for summary judgment, Filing No. 540, relates only to the claims of plaintiff Sampson and is also rendered moot by the settlement. Also, the portion of the NSP defendants' motion for summary judgment, Filing No. 543, that relates to plaintiff Sampson's claims is similarly moot.

### A. NSP defendants' motion

The NSP defendants move for summary judgment in their favor on Livers's claim for arrest and detention without probable cause (Count II of Livers's Amended Complaint). Alternatively, they argue they are entitled to a partial summary judgment on that count that limits their potential liability to the period from the time when Livers was

2

picked up by defendant Lambert and defendant Schenck on April 25, 2006, to the conclusion of Livers's confession on April 25, 2006, but not for the remainder of Livers's subsequent detention. This is the NSP defendants' second attempt at summary judgment. They present theories in the present motion that were not advanced in their earlier motion. They now argue that they are not personally liable for any alleged deprivation because the Nebraska State Patrol was not the lead agency in the investigation into the murders of the Stocks, but merely assisted the Cass County Sheriff's Office. Also, they contend that probable cause for Mr. Livers's arrest emerged during the interrogation process when Livers made inculpatory statements that allegedly included nonpublic facts about the Stock homicide that had not previously been "fed" to him. *Livers v. Schenck*, No. 8:08CV107, Filing No. 544, NSP Defendants' Brief at 12.

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042, (8th Cir. 2011) (en banc). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out

'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324.

A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (noting the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Id.* at 251.

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

In their earlier motion for summary judgment, these defendants asserted that they were shielded by qualified immunity from liability for all of Livers's claims. *See Livers v. Schenck*, No. 8:08CV107, Filing No. 280. This court denied summary judgment and that decision was upheld by the Eighth Circuit Court of Appeals with respect to Livers's due process and Fourth Amendment claims. *See Livers,* No. 8:08CV107, Filing No. 340, Memorandum and Order; *Livers v. Schenck*, 700 F.3d 340, 351-55, 358 (8th Cir. 2012).

The court finds the NSP defendants' new theories in support of their motion for summary judgment lack merit as a basis for summary judgment. The court has reviewed the evidence in support of and opposition to the NSP defendants' motion. The court finds that the fact that the Nebraska State Patrol was not the lead agency in the investigation, even if true, would not absolve the NSP defendants from liability for their role in the unconstitutional seizure. The investigation of the murders of Wayne and Sharmon Stock was conducted jointly by the Cass County Sheriff's Office, the Nebraska State Patrol and the Douglas County Crime Scene Investigation Division. There is evidence that NSP Investigator Lambert and Cass County Deputy Sherriff Schenck worked side-by-side throughout the investigation. It is undisputed that Lambert and Schenck interviewed Livers together on April 17, 2006; they jointly transported him to the police station on April 20, 2006, for fingerprints and buccal swabs for the investigation; they both interrogated Livers and elicited his confession on April 25, 2006; and they later traveled together to Wisconsin to interview Jessica Reid and Gregory Fester. Even a private actor may incur § 1983 liability if he is a willing participant in a joint action with a state actor acting under color of state law. *Sanders v. City of Minneapolis, Minnesota,* 474 F.3d 523, 527 (8th Cir. 2007). It follows then that a state actor willingly participating in a joint action with another state actor can be liable for deprivation of rights under § 1983, no matter the extent of the participation. Further, if persons conspire to deprive a person of his or her constitutional rights, each is jointly liable for his or her co-conspirators' acts in furtherance of the conspiracy. *Livers,* 700 F.3d at 360. There is evidence from which a jury could conclude that the NSP defendants were directly involved and participated in the allegedly unconstitutional seizure, or conspired to do so.

Further, the court finds that the NSP defendants have not shown as a matter of law that the NSP defendants had probable cause for Livers's arrest and detention from information that emerged during his confession. Examination of the evidence submitted in favor of and opposition to the motion shows there is a genuine issue of material fact on whether the totality of circumstances surrounding the arrest could support a finding of probable cause. Expert testimony indicates that the tactics used in the interrogation of Livers were improper and highly coercive and correlate with false confessions. The NSP defendants concede that there is a triable issue with respect to whether Livers was illegally seized when Schenck and Lambert arrived at Livers's home in Lincoln on April 25 and transported him to the Cass County Law Enforcement Center in Plattsmouth with admittedly nothing more than speculation to support an arrest for murder. *See Livers*, 700 F.3d at 358. The Eighth Circuit has found a triable issue with respect to whether defendant O'Callaghan's questionable polygraph results could have furnished probable cause. *See id.* Further, the NSP defendants also concede that the fact that Mr. Livers made inculpatory statements on April 25—standing alone—does not furnish probable cause. *See Livers*, No. 8:08CV107, Filing No. 544, NSP Defendants' Brief at 14.

There is evidence from which a jury could reasonably conclude that allegedly non-public information gleaned in the interrogation were facts either publicly known, suggested to Livers during the interrogation or via leading questions, and/or were guessed by chance. An arguably coerced confession that consists of assenting to leading or improper questions does not establish probable cause. The degree of coerciveness in the interrogation is at the heart of this action, it is the ultimate issue of fact for resolution by the jury. There is evidence that suggests that whatever inculpatory

statements Livers may have made in the interrogation were the result of abusive interrogation tactics.

Also, the NSP defendants have not shown they are entitled to a temporal limit or restriction on their liability. There are genuine issues with respect to the nature and extent of Livers's damages. The jury is entitled to resolve issues of proximate cause. Accordingly, the court finds the NSP defendants' motion for summary judgment or partial summary judgment on Livers's Fourth Amendment claim will be denied.

### B. Cass County's motion

Cass County did not file for summary judgment when its employees, Investigator Earl Schenck and Deputy Sherriff Sandra Weyers, did. Cass County now argues that the Eighth Circuit Court of Appeals' decision entitles it to judgment as a matter of law "to the extent the [Appeals] Court found Defendants Earl Schenck and Sandy Weyers did not commit a violation of any clearly established federal law." *Livers*, No. 8:08CV107, Filing No. 549, Brief at 7. The Eighth Circuit found Cass County defendants Earl Schenck and Sandy Weyers did not commit any violation of the plaintiffs' clearly established due process rights under the Fifth Amendment, finding that the Fifth Amendment restrains only the federal government. See *Livers*, 700 F.3d 340, 351 & n.9. The Eighth Circuit also found in the Cass County defendants' favor on Livers's right to disclosure of exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), finding no *Brady* violation since Sampson and Livers were not convicted. *Id.* at 359. Further, the court found both the Cass County and Douglas County defendants were entitled to qualified immunity for any claim of failure to intervene or to prevent fabrication of evidence, finding that, assuming there is such a duty, it was not clearly established at the time of the incident in 2006. *Id.* at 360.

7

By virtue of the parties' earlier statements of material facts, this court's previous order denying earlier motions for summary judgment, and the Eighth Circuit's affirmance of most of the court's findings, the law of the case shows there are genuine issues of material fact with respect to several issues. *See* Filing No. 283, defendants Schenck's and Weyers's motion for Summary judgment; Filing No. 340, Memorandum and Order; Filing No. 369, Eighth Circuit Opinion; *Livers,* 700 F.3d at 354. In finding that Schenck and Weyers were entitled to qualified immunity, the Eighth Circuit found evidence sufficient to support a claim that defendant Schenck engaged in a conscience-shocking interrogation of Livers, resulting in a coerced, involuntary, and false confession in violation of the Fourteenth Amendment. *See Livers,* No. 8:08CV107, Filing No. 303, Livers's response to summary judgment motions at 11-35; *Livers,* 700 F.3d at 354 ("The alleged actions of Investigators Schenck, Lambert, and O'Callaghan during Livers' interrogation potentially violated a right that was clearly established by [*Wilson v. Lawrence County*, 260 F.3d 946 (8th Cir. 2001)] in 2001, well before Livers was interrogated."). Further the Eighth Circuit found issues of fact with respect to whether the investigators, including defendant Schenck, realized—or should have realized—that Livers was mentally challanged. *Livers,* No. 8:08CV107, Filing No. 303, Response at 7-8; 24-25; *Livers*, 700 F.3d at 352 ("[T]here is evidence Livers is mentally retarded and Investigators Lambert, Schenck, and O'Callaghan knew or should have known Livers was mentally retarded"). There is no dispute that the Stock homicide investigation involved the fabrication of evidence, specifically, the planting of blood evidence in Sampson's car. *Livers*, 700 F.3d at 349 ("In March 2010, Commander Kofoed was convicted on state charges of felony tampering with physical evidence."). The Eighth Circuit also found a viable claim based on allegations that the Cass County defendants

8

were co-conspirators in the planting of blood evidence. *Livers*, No. 8:08CV107, Filing No. 303, Response at 37-41; *see Livers,* 700 F.3d at 355 (basing its finding on testimony that Investigators Schenck and Lambert frequently asked Douglas County employees to retest items when initial tests did not link Livers or Sampson to the crimes, and reports that a Douglas County employee felt pressured to "find something."). The Eighth Circuit's decision also supports the claim that Livers was arrested without probable cause prior to his confession, when he was held at the Cass County Law Enforcement Center on April 25, 2006, for an interrogation. *Livers*, No. 8:08CV107, Filing No. 303, Response at 11-23; *Livers*, 700 F.3d at 358 ("At the time Livers was seized, he had not yet begun to confess. At that point, the only information implicating Livers in the murders was speculation and the questionable polygraph results. Rumor alone is not sufficient to establish probable cause"). "A reasonable jury could infer from the close cooperation between Investigators Schenck, Lambert, and O'Callaghan during Livers' April 25 interrogations that Investigators Schenck and Lambert knew the polygraph examination was fundamentally flawed." *Livers*, 700 F.3d at 358.

Cass County's motion is directed at plaintiff Livers's claim that Cass County failed to provide adequate training and supervision to its investigators. Cass County asserts that the failure to train claim fails as a matter of law because Livers cannot demonstrate any Cass County policy, practice or custom that deprived him of Constitutional rights. Further, it argues it cannot be held liable for Sheriff Brueggemann's failure to ensure proper training because he is not a policymaker. It also argues that there is no evidence of deliberate indifference to plaintiff's rights by Cass County.

"Respondeat superior or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). A municipality may be held liable under § 1983 for a rights violation when either the municipality had an unlawful policy or practice that caused the rights violation, or a municipal "policymaker" directly caused the rights violation. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Yellow Horse v. Pennington County*, 225 F.3d 923, 928 (8th Cir. 2000). A municipality can be held "liable under 42 U.S.C. § 1983 for constitutional violations resulting from its failure to train municipal employees." *City of Canton*, 489 U.S. at 380; *Turney v. Waterbury,* 375 F.3d 756, 761 (8th Cir. 2004) (noting that "failure to properly train employees is one way in which an entity can exhibit deliberate indifference toward the rights of others."). A plaintiff seeking to hold a county liable for failure to train must show that: "(1) the [county's] . . . training practices [were] inadequate; (2) the [county] was deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice by [the county]; and (3) an alleged deficiency in the . . . training procedures actually caused the plaintiff's injury." *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (internal quotations omitted). A plaintiff must establish that the municipality, through its policymakers, failed to train or supervise employees despite: 1) having actual or constructive knowledge of a pattern of similar constitutional violations by untrained employees, or 2) the fact that the constitutional violation alleged was a patently obvious and "highly predictable consequence" of inadequate training. See *Board. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407–09 (1997). In a narrow range of circumstances, an allegedly inadequate training program that has led an employee to violate a plaintiff's rights, accompanied by a showing that the municipality has failed to train its employees to handle recurring situations that present

10

an obvious potential for such a violation, presents the sort of highly predictable consequence of the a failure to train that justifies a finding of "deliberate indifference" by policymakers. *Id.* at 398; *see also Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013) ("Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from . . . a deliberately indifferent failure to train or supervise[.]") (internal citations and quotations omitted).

With respect to a failure to train claim, notice and deliberate indifference can be established by a showing of a patently obvious need for the training. *Livers*, 700 F.3d at 356. Also, "[c]ausation is generally a jury question unless, in a particular case, the question is so free from doubt as to justify taking it from the jury." *Ricketts v. City of Columbia, Mo.*, 36 F.3d 775, 780 (8th Cir. 1994). As long as the causal link is not too tenuous, the question of proximate cause should be left to the jury. *Id.*

Because a suit against an official in his official capacity is essentially a suit against the municipality, allegations of conduct by a state actor in his official capacity are essentially allegations against the municipality. *Rynders v. Williams*, 650 F.3d 1188, 1195 (8th Cir. 2011). A county can be liable "if one of its customs or policies caused the violation of [the plaintiff's] rights." *Id.* (quoting *Copeland v. Locke*, 613 F.3d 875, 882 (8th Cir. 2010)). Also, "[a]lthough rare, a public official's single incident of unconstitutional activity can establish the requisite policy if the decision is 'taken by the highest officials responsible for setting policy in that area of the government's business.'" *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). In that scenario, the district court must consider the extent to which a state actor in his official capacity is responsible for setting the county's training policy before granting summary judgment. *Id.*

Whether an official is a policymaker is a question of law for the trial judge to decide. *Atkinson,* 709 F.3d at 1215. The court consults two key sources to determine whether an official is a final policymaker: (1) "state and local positive law" and (2) state and local "'custom or usage' having the force of law." *Id.* (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

The court finds Cass County is not entitled to summary judgment in its favor because the plaintiff's allegations do not premise liability on respondeat superior but involve actions by a policymaker whose conduct can be considered that of the County. A coerced confession is a highly predictable consequence of a failure to train on interrogation techniques and/or on law enforcement interaction with persons with cognitive disabilities that could justify a finding of deliberate indifference by a policymaker.

The court finds that Cass County has not shown as a matter of law that Sherriff Brueggemann is not a policymaker with respect to the training at issue.[1] The evidence suggests the contrary is true, but at least there remains a genuine issue of fact on the issue. Cass County admits in its brief that Sheriff Brueggemann is the official with final authority to promulgate all policies applicable to his agency: "Sheriff Brueggemann is the duly elected Sheriff of Cass County and any policies or procedures of the County Sheriff's Office require his express approval." *Livers*, No. 8:08CV108, Filing No. 549, Brief at 14.

---

[1] The authority of each county sheriff requires particularized examination to determine whether the sheriff is a policymaker. Although there is some evidence, based on Sheriff Brueggemann's own statements and policies, from which the court could find that he exercises final policymaking authority, it will be incumbent on the plaintiff to produce evidence at trial to prove as a matter of law that he is a policymaker.

Cass County's reliance on Nebraska criminal statutes as support for its position is unavailing. The statutes cited by Cass County in fact establish that the state's law enforcement officers and county sheriffs have authority to make policy with respect to criminal investigations and enforcement of the state's criminal code. See Neb. Rev. Stat. § 23-1710 ("It shall be the duty of the sheriff by himself or deputy to preserve the peace in his county, to ferret out crime, to apprehend and arrest all criminals, and insofar as it is within his power, to secure evidence of all crimes committed in his county"); Neb. Rev. Stat. § 29-401 (empowering deputy sheriffs to "arrest and detain any person found violating any law of this state. . .). Cass County acknowledges in its brief that "the task of ferreting out crime, investigating law violations, enforcing the state's criminal laws, apprehending suspects and gathering evidence were functions specifically delegated to their office as deputy sheriffs by way of state statute." Filing No. 549, Brief at 37.

Also, the court finds the cases cited by Cass County for the proposition that sheriffs are not policymakers are inapposite. None of those cases involved a failure to train and there is no indication that any evidence that the sheriffs therein exercised final policymaking authority was presented to the courts. See Poor Bear v. Nesbitt, 300 F. Supp. 2d 904 (D. Neb. 2004); Williams v. Scotts Bluff Cnty., No. 7:05CV5018, 2005 WL 3159661 (D. Neb. Nov. 28, 2005); and Branting v. Schneiderheinz, No. 4:CV96–3104, 1996 WL 580457 (Oct. 1, 1996).

The evidence submitted in support of and opposition to the motion shows that there are genuine issues of fact with respect to the elements of a failure to train claim. There is evidence from which a jury could find that that Sheriff Brueggemann knew defendants Schenck and Weyers would be responsible for investigation of complex

13

criminal cases and failed to train them in critical areas. Similarly, there is evidence from which a reasonable jury could find that training was lacking in dealing with suspects with cognitive impairments or mental illness. There are genuine issues of fact with respect to the content and adequacy of the training.

Contrary to Cass County's contention, the Eighth Circuit's findings with respect to claims against Douglas County Sherriff Tim Dunning for failure to supervise and/or train are not determinative of the viability of such a claim with respect to Sherriff Brueggemann. The allegations involving Dunning were primarily concerned with failure to supervise and the Eighth Circuit's findings were largely fact-based. *Livers*, 700 F.3d at 355-56. The failure-to-train claim was rejected because there was no patently obvious need to train law enforcement officers not to fabricate evidence (since any reasonable employee would know fabricating evidence is unacceptable) and because the alleged failure to train on a duty to disclose exculpatory evidence was not causally linked to defendant Kofoed's misconduct. *Id.* at 356. The Eighth Circuit found Dunning was entitled to qualified immunity based on the finding that there was no evidence that Dunning knew or should have known of the ultimately criminal acts of defendant David Kofoed. *Id.* at 357. Those findings do not carry over to the claims against Cass County for failure to train. A need to train subordinate law enforcement officers to properly conduct interrogations and to properly interact with cognitively disabled or mentally ill suspects may well be patently obvious and the failure to train these skills can be causally linked to the violation of Livers's rights. Accordingly, the court finds Cass County's motion for summary judgment should be denied.

IT IS ORDERED:

1. Defendant Douglas County Sheriff's Office's motion for summary judgment (Filing No. 665 in *Sampson v. Schenck*, No 8:07CV155) is denied as moot.

2. Defendant William Lambert's and defendant Charles O'Callaghan's motion for partial summary judgment (Filing No. 668 in *Sampson v. Schenck*, No 8:07CV155) is denied as moot.

3. Defendant Douglas County's Motion for Summary Judgment (Filing No. 540 in *Livers v. Schenck*, No. 8:08CV107) is denied as moot.

4. Defendant William Lambert's and defendant Charles O'Callaghan's motion for partial summary judgment (Filing No. 543 in *Livers v. Schenck*, No. 8:08CV107) is denied.

5. Defendant Cass County's motion for summary judgment (Filing No. 548 in *Livers v. Schenck*, No. 8:08CV107) is denied.

DATED this 13th day of September, 2013.

BY THE COURT:

s/Joseph F. Bataillon
United States District Judge