IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NICHOLAS SAMPSON,<br><br>                     Plaintiff,<br><br>          v.<br><br>INV. WILLIAM LAMBERT, in his official and individual capacities; INV. CHARLES O'CALLAGHAN, in his individual and official capacities; DAVID KOFOED, Commander of the Douglas County Sheriff's Office Crime Scene Investigation Division in his official and individual capacities; and DOUGLAS COUNTY SHERIFF'S OFFICE, a Nebraska political subdivision,<br><br>                     Defendants. | **8:07CV155**<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on plaintiff's motion for a determination of compensatory and punitive damages and an award of attorney fees and costs against defendant Kofoed, Filing No. 780.  Defendant Kofoed has not responded to the motion.

This court earlier determined that defendant Kofoed is liable for the injuries sustained by Sampson in the incident at issue in this case.  Filing No. 775, Memorandum and Order.  The plaintiff seeks a judgment against Kofoed for compensatory damages in the amount of $1,650,000; punitive damages in the same amount; and an award of attorney fees and costs from defendant Kofoed in the amount of $328,716.09 under 42 U.S.C. § 1988.  The plaintiff also seeks costs in the amount of $129,324.93.  Defendant Kofoed has not responded to the motion.

I.   FACTS

The facts of the case can be found in *Livers v. Schenck*, 700 F.3d 340, 344-49 (8th Cir. 2012), *State v. Kofoed*, 283 Neb. 767 (2012) (affirming Kofoed's conviction);

and Filing No. 679-27, Ex. 27, Verdict, *State v. Kofoed*, No. CR 09-40 (Cass County, Nebraska, District Court March 23, 2010) (reciting extensive factual findings).

The record shows that Sampson will receive $965,000 in the settlement with the other defendants.   Filing No. 781, Index of Evid., Ex. 5, Omaha World Herald article.  The plaintiff herein also achieved non-monetary relief in the form of additional training of law enforcement officers.   Filing No. 779, status report.  The companion case of *Livers v. Kofoed*, No. 8:08CV107, settled on the eve of trial for a total payment by defendants other than Kofoed in the amount of $1,650,000.  *See Livers v. Kofoed*, No.8:08CV107, Filing No. 718, Brief at 18 (D. Neb.).   In *Livers*, the court entered judgment against Kofoed for $1,650,000 in compensatory damages and $1,650,000 in punitive damages. *Livers v. Sampson*, 8:08CV107, Filing No. 727, Judgment*.*

In support of his motion, the plaintiff submits his deposition which provides details of his incarceration, threatened exposure to the death penalty, and readjustment to life after his release.  With respect to punitive damages, the plaintiff also submits the evidence submitted in opposition to the defendants' motions for summary judgment showing the conduct by Kofoed that ultimately led to his conviction for a felony charge of evidence-tampering for fabricating false evidence against the plaintiff in the Stock murder investigation.  *See* Filing Nos. 781, 774, Indices of Evid.  Further, he submits a psychological evaluation showing he suffers from a moderately severe emotional disturbance as a result of the false charges.   Filing No. 781, Index of Evid., Ex. 3

With respect to attorney fees and costs and expenses, the plaintiff seeks a total award in the amount of $328,716.09.  *See* Filing No. 781, Index of Evid., Ex. 1, Affidavit of Maren Chaloupka, Ex. A, billing records of the Law Firm of Chaloupka, Holyoke,

Snyder, Chaloupka, Longoria & Kishiyama; Exs. B & C, statements of expenses.  The

plaintiff seeks compensation for the work of attorney Maren Chaloupka and paralegals

employed by her firm for 2,251.4 hours of work at rates of $50-$75 per hour for

paralegals and $125-$195 per hour for Ms. Chaloupka, for a total of $199,675.  *Id.*, Ex.

A.  In her affidavit, Ms. Chaloupka states that her time was recorded conservatively.

Filing No. 781, Ex. 1, Chaloupka Aff. at 5.   Further, she states that her firm's

compensation is on a contingency fee basis.[1]  *Id.*   Plaintiff has shown that she has

close to twenty years of experience and has prosecuted over 68 civil and criminal

appeals in the state and the federal appellate courts.  *Id.*  Her hourly rate was $125.00

per hour at the inception of this case and has increased to $195 since then.  *Id.* at 4.

The plaintiff seeks an award of costs and reasonable litigation expenses in the

amount of  $129,324.93.  *Id.*, Exs. B & C.  The statement of expenses reflect charges

and advances for postage, photocopies, travel, court reporter fees, expert witness fees,

computer research, office supplies, filing fees, and transcripts.  Plaintiff has also shown

that the fees and costs were necessary to the prosecution of the case.  *Id.* at 5.

II.  DISCUSSION

A.  Compensatory Damages

1.  Law

Generally, "[a]wards for pain and suffering are highly subjective and the

assessment of damages is within the sound discretion of the" factfinder.  *Christensen v.

Titan Distribution, Inc.*, 481 F.3d 1085, 1097 (8th Cir.2007) (quoting *Webner v. Titan

Distribution, Inc.*, 267 F.3d 828, 836 (8th Cir. 2001)); *see also Hall v. Gus Const. Co.,*

---

[1] Although John Ballew was co-counsel, he will not seek a separate award of fees since
Chaloupka will be dividing fees under the contingency agreement. Filing No. 781-1, Chaloupka Aff. at 5.

*Inc.*, 842 F.2d 1010, 1017 (8th Cir. 1988) (stating that the inadequacy or excessiveness of an award is basically a matter for the trial court and the appellate court will intervene only in the rare situations where the court concludes there is "plain injustice" or a "monstrous" or "shocking" result).  "A plaintiff's own testimony can be sufficient for a finding of emotional distress, and medical evidence is not necessary."  *Christensen*, 481 F.3d at 1097.

The plaintiff is entitled to an award of compensatory damages to make him whole for the physical pain and suffering and the mental anguish that he endured as a result of defendant Kofoed's conduct.  *See* Eighth Cir. Model Jury Instr. (Civil) § 17.70 (2013); *Carey v. Piphus*, 435 U.S. 247, 254 (1978) (stating that the basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights).  "The common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights."  *Carey*, 435 U.S. at 254.  In order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question—just as the common-law rules of damages themselves were defined by the interests protected in the various branches of tort law.  *Id.* at 259.

The content of the federal common law a court is to apply must be determined through the process outlined in 42 U.S.C. § 1988, including, where appropriate, through reference to principles of state law.  *See Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 240 (1969) ("[B]oth federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes).  Under § 1988, courts

utilize a three-step process for the selection of the appropriate substantive law in civil rights actions.  *See Robertson v. Wegmann*, 436 U.S. 584, 587-90 (1978).  First, the court determines whether federal civil rights law is deficient in that it fails to furnish a particular rule; second, if it is deficient, the most closely analogous state law may fill the vacuum; and third, state law may be applied only if it is consistent with the meaning and purpose of constitutional and federal statutory law.  *Id.*  If state law is inconsistent, it must be disregarded in favor of the federal common law.  *Id.* at 589.

Section 1983 is silent on the question of when a setoff for a prior settlement against a joint and several tortfeasor is appropriate.  *Johnson v. Rogers*, 621 F.2d 300 (8th Cir.1980) (finding Federal law is deficient on the effect of a settlement with a joint tortfeasor on the liability of a nonsettling tortfeasors). Under Nebraska law, a defendant's eligibility for a settlement credit hinges upon a determination that the plaintiff has received satisfaction for the injuries alleged in his action:  "to the extent that [the plaintiff] has received satisfaction from the settlement with [one defendant] for injury and damage alleged in this action, any damages for which [the second defendant] would be potentially liable must be reduced *pro tanto*."  *Jameson v. Liquid Controls Corp.*, 618 N.W.2d 637, 644 (Neb. 2000) (quoting *Vowers & Sons, Inc. v. Strasheim*, 576 N.W.2d 817, 825 (Neb. 1998).  Nebraska law on settlement credits has been predicated firmly on the principle of denying double recoveries to plaintiffs, not on the defendants' relative positions in equity.  *Nebraska Plastics, Inc. v. Holland Colors Americas, Inc.*, 408 F.3d 410, 420 (8th Cir. 2005).

However, the burden is on the person seeking the offset to show by a preponderance that it is entitled to a setoff.  *Strasburg v. Union Pacific R.R.*, 839

5

N.W.2d 273, 280 (Neb. 2013). In a case with multiple theories, the burden is on the party seeking a setoff to establish the amount that should be allocated to each individual theory of recovery. *Valley Air Serv., Inc. v. Southaire, Inc.*, 432 Fed. App'x 602, 606 (7th Cir. 2011). If the party fails to do so, "any attempt at allocation on the part of the trial judge would be purely speculative and improper." *Id.; see also Digital Ally, Inc. v. Z3 Tech., LLC*, No. 09-2292, 2012 WL 4061419, *5 (D. Kan. Sept. 14, 2012) (applying Nebraska law) (finding that the party asserting a setoff "has the burden to demonstrate that the settlement amount and the judgment against [the settling defendant] represent a single injury with common damages").

### 2. Analysis

The court has reviewed the plaintiff's submissions and finds that a compensatory award of $965,000 against defendant Kofoed is warranted in this case. Sampson suffered a grave injustice—being charged with and incarcerated for a crime based on phony evidence. He has shown he will suffer the after-effects of this injustice for the rest of his life. The evidence shows that Kofoed conspired with the other defendants to deprive Sampson of his rights, and Kofoed was arguably the most culpable of the defendants. Despite notice, Kofoed has not responded to the plaintiff's motions, nor objected to the amount of damages sought. In the absence of any objective measure of the physical and mental pain the plaintiff suffered and will continue to suffer, the court finds the amount of the settlement negotiated by Sampson with the other defendants is an appropriate benchmark on which to peg the damages he suffered.

6

Defendant Kofoed would arguably be entitled to a setoff on a showing that the damages could be fairly apportioned to the different defendants and theories of recovery.  However, defendant Kofoed has not made the requisite showing.

      B.   Punitive Damages

          1.   Law

Punitive damages are designed to punish and to deter harmful conduct.  *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 492 (2008); *Ondrisek v. Hoffman*, 698 F.3d 1020, 1027 (8th Cir. 2012).  Punitive damages are appropriate in a federal civil rights action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Quigley v. Winter*, 598 F.3d 938, 952-53 (8th Cir. 2010).  In making an award of punitive damages, the court considers "the degree of reprehensibility of the defendant's conduct," (2) the ratio between punitive damages and actual harm (compensatory damages), and (3) "the civil or criminal penalties that could be imposed for comparable misconduct."  *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575, 580–81, 583 (1996).  The degree of reprehensibility is "the most important indicium of the reasonableness of a punitive damages award."  *Id.* at 575.  In assessing the degree of reprehensibility, the court must consider:

> whether the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

7

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003); *see Ondrisek*, 698 F.3d at 1028.  Also, the ratio between punitive and compensatory damages is the "most commonly cited indicium of an unreasonable or excessive punitive damages award." *Gore*, 517 U.S. at 580.  Punitive damages must bear a reasonable relationship to compensatory damages.  *Id.*  Although the Supreme Court has "'consistently rejected the notion that the constitutional line is marked by a simple mathematical formula,' it has determined that 'few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.'" *Exxon*, 554 U.S. at 501 (quoting *Gore*, 517 U.S. at 582 and *Campbell*, 538 U.S. at 425). When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, may reach the outermost limit of the due process guarantee. *Exxon*, 554 U.S. at 501.  However, a higher ratio may be justified "in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." *Gore*, 517 U.S. at 582.

## 2.   Analysis

Based on its familiarity with the case, the court also finds the plaintiff is entitled to an award of punitive damages.  The evidence shows reckless or callous disregard of the plaintiff's rights, at the least.  Consideration of the factors out lined in *Campbell*, 538 U.S. at 419, demonstrates the extreme reprehensibility of the defendant's conduct. Kofoed is arguably the most culpable of the defendants.  Sampson suffered and continues to suffer emotional distress, Kofoed's conduct was malicious and intentional, and there have been repeated instances of the conduct.  Moreover, Kofoed abused a

position of responsibility and trust.  A substantial punitive award is necessary to punish the defendant and to deter this sort of conduct by public officials.

It is difficult for the court to quantify the extent of Kofoed's culpability in terms of moral turpitude and breach of the public trust.  Kofoed was convicted of manufacturing evidence and falsifying a report.  He has not answered or responded to the plaintiff's allegations in this case, yet he continues to deny wrongdoing and assert his innocence to the press.  Further, there is evidence that Kofoed planted blood evidence in another case as well.  *See State v. Kofoed, 283 Neb. 767, 769 (2012)*.  Consistent with Supreme Court and Eighth Circuit advice on the issue, the court finds that a one-to-one ratio with the compensatory award is sufficient to fulfill the goals of punishment and deterrence in this case.  Accordingly, the court will enter judgment for punitive damages in the amount of $965,000 against defendant Kofoed.

The court further finds that, although Kofoed would arguably be entitled to a setoff against his compensatory award on a proper showing, he is not entitled to any setoff of the punitive damage judgment based on the settlement the plaintiff reached with the other defendants. This case involved multiple theories of recovery against multiple defendants.  Because this case involved multiple causes of action against various defendants, there is no way for the court to determine a fair setoff amount.

### C.   Attorney fees

#### 1.   Law

In an action to enforce rights under 42 U.S.C. § 1983, the court may grant "reasonable" attorney fees to a "prevailing party."  42 U.S.C. § 1988.  The court conducts a two-part inquiry into: (1) whether the party requesting fees is a "prevailing

9

party" in the underlying litigation; and (2) whether the fees requested are "reasonable." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 112. This includes a plaintiff who wins only nominal damages. *Id.*

Whether the fees are "reasonable" hinges largely on the "extent of a plaintiff's success." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). In the Eighth Circuit, two other factors bear on the degree of a plaintiff's success. . *Murray v. City of Onawa, Iowa*, 323 F.3d 616, 619 (8th Cir. 2003) (stating it looks "to Justice O'Connor's concurrence in *Farrar* to help guide it in determining whether attorneys' fees are warranted). The court considers "the significance of the legal issue on which the plaintiff prevailed." *Id.* Second, "any public goal or purpose the lawsuit may have served." *Id.* at 619-20 (finding that "compelling city officials to make at least cursory investigations into serious allegations" that an officer used his position to stalk and harass a former paramour were "significant legal issues and noting that an award of attorney's fees in that case, serves a "clear public policy" by putting police on notice that ignoring allegations of sexual harassment by an officer is constitutionally impermissible). A plaintiff's success in a civil rights case can be measured only in part by monetary success—civil rights actions "provide a forum for exposing official misconduct" and "this exposure helps induce governmental entities to institute policies protective of civil rights." ." *Lash v. Hollis*, 525 F.3d 636, 643 (8th Cir. 2008).

The starting point in determining the amount of attorney fees is the "lodestar," which is calculated by multiplying the number of hours reasonably expended by

10

reasonable hourly rates.  *Hensley*, 461 U.S. at 433; *Perdue v. Kenny A. ex rel. Winn,*

*559 U.S. 542, (2010)* (utilizing lodestar approach in an award under § 1988); *Emery v.*

*Hunt, 272 F.3d 1042, 1046 (8th Cir. 2001)*.  There is a "strong presumption" that the

lodestar figure is reasonable, but that presumption may be overcome in those rare

circumstances in which the lodestar does not adequately take into account a factor that

may properly be considered in determining a reasonable fee.  *Perdue*, 559 U.S. at 553-

54.  A "reasonable" fee is a fee that is sufficient to induce a capable attorney to

undertake the representation of a meritorious civil rights case.  *Perdue*, 559 U.S. at 552.

## 2.  Discussion

The court first finds that the plaintiff is a prevailing party in this action.  The

plaintiff has achieved an excellent result and should receive a fully compensatory fee.

He has obtained all the relief sought from defendant Kofoed.  Further, the facts and

legal theories were intertwined and all of the defendants' actions were taken as part of

the same conspiracy to deprive the plaintiff of civil rights.

The court has carefully reviewed the plaintiff's submissions.  The court finds the

time expended by the plaintiff's attorney in prosecuting this action was reasonable.  This

was an immensely complex case that spanned over six years and included extensive

motion practice and a hotly contested interlocutory appeal.  The case proceeded

through fact and expert discovery and was settled shortly before the trial was to

commence.  There is no doubt the questions in this case were novel and difficult.

The court also finds the plaintiff's counsel is skilled and competent and counsel's

civil rights expertise undoubtedly contributed to the plaintiff's favorable outcome.  The

difficultly, notoriety, and undesirability of the case also weigh in favor of a substantial fee

award.  The court also notes that the case served an important public interest in vindicating the rights of the wrongly accused and exposing public corruption and malfeasance.

Based on its familiarity with attorney fees in this community, the court finds that the hourly rates sought by attorney Chaloupka are reasonable, if not somewhat low for litigation of this type in this locality.  The hourly rates for work performed by paralegals are similarly fair and reasonable in this community.  The court thus finds that the plaintiff should be awarded attorney fees for work performed by attorney Maren Chaloupka and her firm in the amount of $199,675.

The plaintiff is also entitled to an award of costs.  The court has reviewed the plaintiff's submissions and finds an award of costs in the amount of $129,041.09 is appropriate.  A judgment in accordance with this Memorandum and Order will issue this date.  Accordingly,

IT IS ORDERED:

1.    The plaintiff's Motion for Compensatory and Punitive Damages and Attorney Fees and Costs Against Defendant Kofoed (Filing No. 780) is granted.

2.    A judgment in conformity with this Memorandum and Order will issue this date.

DATED this 31st day of March, 2014.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge