IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NICHOLAS SAMPSON, | |
| Plaintiff, | **8:07CV155** |
| v. | |
| DAVID W. KOFOED, in his official and individual capacities | |
| Defendant, | |
| v. | |
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, also known as THE SAINT PAUL TRAVELERS COMPANIES, INC., | |
| Garnishee. | |
| _____ | |
| MATTHEW LIVERS, | **8:08CV107** |
| Plaintiff, | |
| v. | |
| DAVID W. KOFOED, in his official and individual capacities | |
| Defendant, | **MEMORANDUM AND ORDER** |
| v. | |
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, also known as THE SAINT PAUL TRAVELERS COMPANIES, INC., | |
| Garnishee. | |

This matter is before the court on the plaintiffs' motions for attorney fees and expenses, Filing No. 835 in *Sampson v. Schenk*, No. 8:07cv155 ("*Livers*") and Filing No. 787 in *Livers v. Schenk*, No. 8:08cv107 ("*Sampson*");[1] motions for money judgments and orders of garnishment, *Samspon*, Filing No. 838 and *Livers*, Filing No. 789; and motions for a partial summary judgment on the issue of bad faith, *Sampson*, Filing No. 841, and *Livers*, Filing No. 792.  These are garnishment proceedings in aid of execution under Fed. R. Civ. P. 69 and Neb. Rev. Stat. § 25-1010 *et seq.* in connection with underlying actions for civil rights violations under 42 U.S.C. § 1983.  This court has jurisdiction under 28 U.S.C. § 1367.

## I.    BACKGROUND

The facts are set forth in a number of previous opinions and need not be repeated herein.  *See Livers v. Schenck*, 700 F.3d 340, 344-50 (8th Cir. 2012); *State v. Kofoed*, 817 N.W.2d 225, 231-38 (Neb. 2012); *Sampson*, No. 8:07CV155, Filing No. 829, Memorandum and Order at 3-11 (D. Neb. March 30, 2016); Filing No. 782, Memorandum and Order at 1-8 (D. Neb. Mar. 31, 2014); Filing No. 772, Memorandum and Order at 1-14 (D. Neb. Sept. 13, 2013); Filing No. 458, Memorandum and Order at 1-6 (D. Neb. Mar. 28, 2011); *Livers*, No. 8:08CV107, Filing No. 781, Memorandum and Order at 3-11 (D. Neb. March 30, 2016); Filing No. 726, Memorandum and Order at 1-8 (D. Neb. Mar. 31, 2014); Filing No. 658, Memorandum and Order at 1-14 (D. Neb. Sept. 13, 2013); Filing No. 340, Memorandum and Order at 1-6 (D. Neb. Mar. 28, 2011).

---

[1] Future citations to the record in *Sampson v. Schenk*, No. 8:07CV155, will be prefaced only with *Sampson*, and the references to *Livers v. Schenk*, No. 8:08CV107, will be prefaced with *Livers*.  There are substantively identical pleadings filed in both cases.  Consequently, the court will generally cite only to the Sampson case, although there may be a similar pleading in the other case.

As relevant to the present motion, the salient facts are that Sampson and Livers each filed actions for civil rights violations against several defendants in connection with their arrests for two murders. All of the defendants except David Kofoed settled with the plaintiffs. This court entered default judgments against Kofoed for Sampson in the amount of $2,258,716.09[2] and for Livers in the amount of $4,352,637.82.[3] *Sampson*, Filing No. 783; *Livers*, Filing No. 727.

In an effort to enforce the judgments against Kofoed, Sampson and Livers filed motions to determine garnishee liability of St. Paul Fire and Marine Company a/k/a/ The Saint Paul Travelers Companies, Inc. ("St. Paul" or "garnishee") with respect to a policy of insurance St. Paul issued to Kofoed's employer, Douglas County, Nebraska. The policy provided Law Enforcement Liability Protection, with a five-million dollar total limit of liability. *See* Filing No. 829, Memorandum and Order at 12. This court determined that the policy afforded coverage and found that the policy's self-insured retention ("SIR") operated as a large deductible meaning that "St. Paul is not responsible for the first $250,000.00 of the judgments [entered in the two cases]." *Id.* at 42.

In his motion for a judgment on garnishment, Sampson moves for an order directing the garnishee to pay into court the total sum of $2,895,267.89. That amount represents the original judgment ($2,258,716.09) plus prejudgment interest in the amount of $542,091.86 and post judgment interest in the amount of $94,459.93. Livers moves for an order directing St. Paul to pay into the court the total amount of $5,579,298.22, representing the original judgment ($4,352,637.82) plus prejudgment

---

[2] That amount reflects $965,000.00 in compensatory damages, $965,000.00 in punitive damages, $129,041.09 in costs, and $199,675.00 in attorney fees. *See Sampson*, Filing No. 783, Judgment.
[3] That amount reflects $1,650,000.00 in compensatory damages, $1,650,000.00 in punitive damages, $52,981.32 in costs and $ 999,656.50 in attorney fees. *See Livers*, Filing No. 727, Judgment.

interest in the amount of $1,044,633.08, and postjudgment interest in the amount of $182,027.31.[4]

In addition, the plaintiffs move for a partial summary judgment seeking a declaration that St. Paul acted in bad faith by breaching its duty to defend and to indemnify Kofoed, and in refusing to settle for less than the policy limit. They argue that, on a finding of bad faith, St. Paul is legally obligated to pay the judgments in full and asks the court to order St. Paul to pay into the court an amount in excess of the policy limits.

In response to the motions for a garnishment judgment, St. Paul first contends that it does not owe prejudgment interest. It argues that the present proceeding is a garnishment action to enforce a judgment, and the judgment did not include prejudgment interest.[5]   It also argues that the plaintiffs cannot recover punitive damages.[6]

---

[4]The plaintiffs base their claims to prejudgment interest on Neb. Rev. Stat. §§ 45-103.02(2) and 45-104 and their claim to postjudgment interest at the rate of 12% per annum on Neb. Rev. Stat. § 45-103.02(2) and § 45-104.

[5]The plaintiffs do not seek prejudgment interest against Kofoed as part of the underlying judgments, they seek a ruling that St. Paul owes prejudgment interest from the time the court determined the coverage issue, March 30, 2016. *See Sampson,* Filing No. 851, Reply Brief at 12.

[6]In making that argument, St. Paul reasserts arguments raised and rejected by this court in connection with the coverage issue. St. Paul argues:

> It is St. Paul's position that the acts of Kofoed on which the punitive award is based do not constitute official activities or operations of Douglas County. Nor can that conduct be considered work done within the scope of Kofoed's employment or in the performance of his duties for Douglas County. The award was rendered against Kofoed in his individual capacity and falls outside the scope of Douglas County's insurance coverage.

*Sampson*, Filing No. 847, Brief at 12. For the reasons stated in its earlier order, the court again rejects that argument. *See Sampson,* Filing No. 829, Memorandum and Order at 24-28, 33-41. Further, a state's public policy does not bar recovery under a federal statute. *State ex rel. Cherry v. Burns,* 602 N.W.2d 477, 484 (Neb. 1999) (noting punitive damages are recoverable in a suit filed in Nebraska under § 1983).

St. Paul resists the plaintiffs' summary judgment motions, contending it did not act in bad faith and is not liable for amounts in excess of the policy limits. It argues that the plaintiffs' bad faith is an action sounding in tort and is not based on the policy. Further, St. Paul contends that plaintiffs lack standing to bring a bad faith claim absent a specific assignment to that effect from Kofoed. St. Paul also argues that the plaintiffs' motions are improper and untimely.

In their motions for attorney fees, the plaintiffs ask the court to award attorney fees the amount of $15,298.50 (representing 66.10 hours of work at rates of $195.00 to $250.00 dollars per hour) and expenses in the amount of $739.52 for services rendered to Sampson in the garnishment proceedings and attorney fees of $217,614.50 (representing 909 hours of work at rates of $135.00 to $275.00 per hour) for services rendered to Livers. St. Paul acknowledges that plaintiffs are the prevailing parties at this point in the litigation and does not dispute the amount of attorney fees requested, stating it "has elected not to contest the amount of attorney[] fees". Filing No. 848, Response at 1. St. Paul argues only that the award would be premature pending the result of St. Paul's eventual appeal of the court's decision on coverage. St. Paul

---

Punitive damages can be and have been recovered in Nebraska under § 1983. *See, e.g., Campos v. Barney G. Inc.*, No. 8:06CV699, 2007 WL 1341442, *2 (D. Neb. April 3, 2007); *Hirsh v. Lecuona*, No. 8:06CV13, 2008 WL 2795859,*7-*10 (D. Neb. July 18, 2008).

The cases cited by the plaintiffs in support of their proposition are inapposite. The cases hold only that punitive damages are not recoverable against municipal entities under § 1983 and bringing suit against a public official in his official capacity is the same as bringing suit against the municipal entity but punitive damages against officials in their individual capacities are recoverable. *See Fernandez v. Taos Mun. Schs. Bd. of Educ.*, 403 F. Supp. 2d 1040, 1043 (D.N.M. 2005); *Riggs v. City of Owensville*, No. 4:10-CV-793 CAS, 2010 WL 2681384, at *2 (E.D. Mo. July 2, 2010). Kofoed was sued in his individual capacity. In an action pursuant to 42 U.S.C. § 1983, punitive damages can be awarded against municipal employees, but not against the governmental entity itself. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Punitive damages may be assessed when a defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

alternatively asks that "if an order is entered, [the order] should state that it is contingent upon Sampson remaining the prevailing party after completion of the appellate process and is subject to reversal if St. Paul prevails." *Sampson*, Filing No. 848, Response at 2.

## II.    LAW

### A.    Ancillary Jurisdiction

The court is under an independent obligation to assure itself that it has subject matter jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). "Subject-matter jurisdiction is a threshold requirement which must be assured in every federal case." *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990).

The court has ancillary enforcement jurisdiction over claims that have "a factual and logical dependence on 'the primary lawsuit.'" *Peacock v. Thomas*, 516 U.S. 349, 355 (1996). The court has inherent power to enforce its judgments. *Id.* at 356. A federal court may assert ancillary jurisdiction "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994). The Supreme Court has approved the use of ancillary jurisdiction "over a broad range of supplementary proceedings . . . to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." *See Peacock,* 516 U.S. at 356.

"Such jurisdiction, however, may not extend 'beyond attempts to execute, or to guarantee eventual executability of, a federal judgment.'" *Deretich v. City of St. Francis*, 149 F.3d 1187, 1998 WL 327207, *1 (8th Cir. 1998) (per curiam) (quoting *Peacock,* 516 U.S. at 357). The reach of the federal courts' ancillary jurisdiction does not extend to

6

"the exercise of jurisdiction over proceedings that are 'entirely new and original,' or where 'the relief [sought is] of a different kind or on a different principle' than that of the prior decree."  *Id.* at 358 (quoting *Krippendorf v. Hyde*, 110 U.S. 276, 285 (1884) and *Dugas v. American Surety Co.*, 300 U.S. 414, 428, (1937) (internal citations and quotation omitted)).  Also, ancillary jurisdiction is not justified over a new lawsuit to impose liability for a judgment on a third party. *Peacock*, 516 U.S. at 357-58.

### B.    Garnishment

In its earlier Order, this court summarized the law with respect to garnishment proceedings:

> The Federal Rules provide the "procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1).   Under Nebraska law, garnishment is a legal, not equitable, remedy unknown at common law and is a purely statutory remedy.   *Gerdes v. Klindt*, 570 N.W.2d 336, 341 (Neb. 1997).   The garnishee is not liable unless the defendant had a right of action against him for the legal demand due or to become due.   *Id.*   In an action to determine the liability of the garnishee, the plaintiff has the burden to establish why the garnishee was liable to the defendant at the time notice of garnishment was served.   *Id.*   The claim of the judgment creditor garnishor can rise no higher than the claim of the garnishor's judgment debtor against the garnishee.   *Meyers v. Christensen*, 776 N.W.2d 201, 205 (Neb. 2009).   The test is whether, as of the time the summons in garnishment was served, the facts would support a recovery by the garnishor's judgment debtor against the garnishee.   *Id.*

*Sampson*, Filing No. 829, Memorandum and Order at 18-19.

"The [Nebraska] garnishment statutes furnish a judgment creditor a means through which to satisfy a judgment, not a means through which to modify the underlying judgment."  *ITT Hartford v. Rodriguez*, 543 N.W.2d 740, 742 (Neb. 1996). Under Nebraska law, "[t]he garnishment proceeding must be supported by a 'judgment *in esse*,' that is, a judgment '[i]n actual existence' or, literally, in being.'"  *Cattle Nat'l*

7

*Bank & Trust Co. v. Watson*, 880 N.W.2d 906, 923 (Neb. 2016). Thus, the judgment must be in existence before a garnishment in aid of execution. *Id.; see* Neb. Rev. Stat. § 25–1056. On establishing that the garnishee holds property or credits of the judgment debtor, the garnishee must then pay such amounts to the court in satisfaction of the garnishor's judgment against the judgment debtor, subject to certain statutory exceptions with regard to wages. *ML Manager, LLC v. Jensen*, 842 N.W.2d 566, 570 (Neb. 2014).

### C.    Bad Faith/Excess Judgment

It is established in Nebraska that "[t]he amount of liability fixed by the insurance policy, upon which the premium is paid, determines the limit of the contractual liability and duty of the insurer." *Olson v. Union Fire Ins. Co.*, 118 N.W.2d 318, 321 (Neb. 1962). The duty to exercise good faith arises out of the contractual relationship, but the liability for bad faith nonetheless remains a tortious wrong. *Lienemann v. State Farm Mut. Auto Fire & Cas. Co.*, 540 F.2d 333, 342 (8th Cir. 1976) (noting a suit for an excess judgment is not upon the policy itself, since there is no covenant in the policy which promises coverage above the policy limits); *see also Valley Boys, Inc. v. State Farm Fire & Cas. Co.*, No. 8:14CV159, 2015 WL 505630 *1 n.1 (D. Neb. Feb. 6, 2015) (the contract defines the duty for purposes of the tort, but the tort is a separate claim and is not dependent on the contract).

Under Nebraska law, a plaintiff in a bad faith tort case must show the absence of a reasonable basis for denying benefits of the insurance policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *Radecki v. Mutual of Omaha Ins. Co.*, 583 N.W.2d 320, 325 (Neb. 1998). If a lawful

8

basis for the insurer's positon actually exists, the insurer, as a matter of law, cannot be held liable for bad faith. *LeRette v. Am. Med. Sec., Inc.*, 705 N.W.2d 41, 49 (Neb. 2005). "'The liability of an insurer to pay in excess of the face of the policy accrues when the insurer, having exclusive control of settlement, in bad faith refuses to compromise a claim for an amount within the policy limit.'" *Hadenfeldt v. State Farm Mut. Auto Ins. Co.*, 239 N.W.2d 499, 502 (1976) (quoting *Olson v. Union Fire Ins. Co.*, 118 N.W.2d 318, 321 (Neb. 1962).

### D.    Interest

#### 1.    Prejudgment Interest

Prejudgment interest is a measure that "serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *West Virginia v. United States*, 479 U.S. 305, 311 n.2 (1987). Section 1983 does not mention the award of prejudgment interest, and there is no general federal statute governing the award of prejudgment interest but courts may allow prejudgment interest even though the governing statute is silent. *Rodgers v. United States*, 332 U.S. 371, 373 (1947) (holding that when a federal statute is silent as to prejudgment interest, the court should fashion a federal rule which grants or denies prejudgment interest based on the congressional purpose of the particular statute). "In a suit to enforce a federal right, the question of whether or not to award prejudgment interest is ordinarily left to the discretion of the district court." *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir. 1998).

Under Nebraska law, prejudgment interest may be awarded only as provided in Nebraska Revised Statutes § 45–103.02. *Roskop Dairy, L.L.C. v. GEA Farm Techs., Inc.*, 871 N.W.2d 776, 802 (Neb. 2015). That statute provides: "Except as provided in section 45-103.04, interest as provided in section 45-104 shall accrue on the unpaid balance of liquidated claims from the date the cause of action arose until the entry of judgment."[7] Neb. Rev. Stat. § 45–103.02(2). A claim is liquidated for purposes of prejudgment interest when there is no reasonable controversy as to both the amount due and the plaintiff's right to recover. *Roskop Dairy,* 871 N.W.2d at 802 (emphasis added). Damages must be readily determinable or ascertainable by computation or a recognized standard in order to constitute liquidated damages for which prejudgment interest is recoverable. *Nebraska Public Power Dist. v. Borg-Warner Corp.*, 621 F.2d 282 (8th Cir. 1980). Where a reasonable controversy exists as to a plaintiff's right to recover or as to the amount of such recovery, the claim is generally considered to be unliquidated and prejudgment interest is not allowed. *Land Paving Co. v. D.A. Const. Co., Inc.,* 338 N.W.2d 779, 780 (Neb. 1983).

### 2.    Postjudgment Interest

In an action arising under federal law, the appropriate compensatory post-judgment interest rate is presumptively the 28 U.S.C. § 1961(a) rate. *El-Tabech v. Clarke*, 616 F.3d 834, 841 (8th Cir. 2010). "Congress has declared the post-judgment rate that adequately compensates federal judgment creditors". *Id.* ("In enacting this statute, Congress determined that adequate compensation for the delay in paying a

---

[7] Nebraska Revised Statutes § 45-103.04 provides that interest shall not accrue prior to the date of entry of judgment for "[a]ny action involving the state, a political subdivision of the state, or any employee of the state or any of its political subdivisions for any negligent or wrongful act or omission accruing within the scope of such employee's office or employment." *See also Eikmeier v. City of Omaha*, 783 N.W.2d 795, 799 (Neb. 2010).

federal judgment is the interest a conservative investor would have earned, not the interest paid by a judgment creditor who borrowed funds while awaiting payment."). The rate is "'calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.'" *Id.* (quoting 28 U.S.C. § 1961(a)). Under extraordinary circumstances a court might be justified in increasing the rate prescribed in § 1961(a) to make a civil rights award adequately compensatory, but it is an abuse of discretion to depart from the § 1961(a) rate where no such circumstances are shown. *Id.*

### E.   Attorney Fees

Under Nebraska law, attorney fees are costs awarded to prevailing parties; attorney fees are not damages, either compensatory or punitive in nature. *Brodersen v. Traders Ins. Co.*, 246 Neb. 688, 523 N.W.2d 24 (1994). Nebraska Revised Statutes Section 44–359 provides:

> In all cases when the beneficiary or other person entitled thereto brings an action upon any type of insurance policy . . . against any company, person, or association doing business in this state, the court, upon rendering judgment against such company, person, or association, shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his or her recovery, to be taxed as part of the costs.

*Wiegert-Stathes v. Am. Family Mut. Ins. Co.*, No. A-08-1041, 2009 WL 3381578, at *10 (Neb. Ct. App. Oct. 20, 2009). "Such attorney fee as may be awarded under the provisions of § 44-359 must be solely and only for services actually rendered in the preparation and trial of the litigation on the policy in question." *Hemenway v. MFA Life Ins. Co.*, 318 N.W.2d 70, 76 (Neb. 1982). When an attorney fee is authorized, the amount of the fee is addressed to the discretion of the trial court. *Barnett v. Peters*, 574

N.W.2d 487, 490 (Neb. 1998).  Factors for the court to consider in awarding fees under Neb. Rev. Stat. § 44-359 are:  the amount involved; the responsibility assumed; the questions of law raised; the time and labor necessarily required; the result of the service performed; and the professional diligence and skill of the attorneys.  *Ruby Co-op. Co. v. Farmers Elevator Mut. Ins. Co.*, 250 N.W.2d 239, 243 (Neb. 1977).  "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates."  *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005); *see also Bowen v. Allied Prop. & Cas. Ins. Co.*, No. 4:11CV3163, 2013 WL 942443, at *6 & n.12 (D. Neb. Mar. 11, 2013) (listing cases approving rates ranging from $125.00 to $385.00 as reasonable in this market).  Both Nebraska and federal law allow for the recovery of "costs" by a prevailing plaintiff.  *See* Neb. Rev. Stat. § 25–1708; Fed. R. Civ. P. 54(d)(1); 28 U.S.C. § 1920.

A district court retains jurisdiction over collateral matters, such as attorneys' fees and costs while an appeal is pending.  *Peter v. Jax*, 187 F.3d 829, 833 n. 2 (8th Cir. 1999).  In addition, a district court retains jurisdiction to the extent necessary to enforce a judgment that has not been stayed.  *Id.*

## III.   DISCUSSION

### A.   Bad Faith/Excess Judgment

The court first finds that the court lacks ancillary jurisdiction to determine St. Paul's liability for any alleged bad faith denial of a claim or refusal to settle within policy limits.  Consequently, the court is without authority to order St. Paul to pay an amount in excess of the policy limits.  Under Nebraska law, a claim for bad faith is a tort claim separate and apart from the contract of insurance involved in this garnishment

proceeding.   The garnishment proceeding was instituted to enforce the judgments obtained against Kofoed in the plaintiffs' § 1983 actions.   The court has determined that garnishee St. Paul is in possession of property of the judgment debtor in that the St. Paul policy provides coverage for Kofoed's acts.   A finding of additional liability on the part of St. Paul, outside what is provided in the policy, would amount to "the exercise of jurisdiction over proceedings that are 'entirely new and original,' or where 'the relief [sought is] of a different kind or on a different principle' than that of the prior decree." *Peacock*, 516 U.S. at 358 (quotations and citations omitted).   Accordingly the court finds the plaintiffs' motion for partial summary judgment should be denied for lack of ancillary jurisdiction, and that portion of the plaintiffs' motion for a money judgment that seeks recovery of an amount in excess of the policy limit should be denied as well.[8]

### B.   Motions for Money Judgment and Order of Garnishment

Having found the policy affords coverage, the most St. Paul can be ordered to pay on the judgments against Kofoed is the policy limit—five million dollars.   The judgments against Kofoed, collectively, amount to $6,611,353.91, exceeding the policy limit.   As they relate to St. Paul's responsibility to pay, each judgment is subject to the $250,000.00 self-insured retention (Sampson's $2,258,716.09 judgment becomes $2,008,716.09 and Livers's $4,352,637.82 judgment becomes $4,102,637.82, for a

---

[8]The court notes that if it were to address the merits of the issue, the court would find the plaintiffs have not established as a matter of law that they are entitled to a partial summary judgment and declaration that St. Paul acted in bad faith.   In its earlier order, the court found there was no duty to defend under the policy; it was replaced by a "right to investigate or defend."   *See Sampson*, Filing No. 829, Memorandum and Order at 14-15.   With respect to any alleged breach of its duty to indemnify, although this court found St. Paul's position that it had a duty to provide coverage only if the self-insured retention was exhausted was erroneous, the court cannot say that the plaintiffs have shown "an absence of a reasonable basis for denying the benefits of the insurance policy and the insurer's knowledge or reckless disregard of a lack of a reasonable basis for denying the claim."   *See Radecki*, 583 N.W.2d at 325.   Despite notice of the fact that Kofoed was unrepresented, however, St. Paul did not exercise its right to investigate or defend.   *See Sampson*, Filing No. 829, Memorandum and Order at 17-18.   The record shows St. Paul proceeded at its peril, relinquishing any control it might have had over the litigation, risking entry of a default judgment, and exposing it to liability up to the policy limits.

combined total covered loss of $6,111,353.91).  Sampson and Livers are each entitled to recover a pro rata share of the policy-limit amount.  The court thus finds the garnishee should be ordered to pay $5,000,000.00 into the court toward satisfaction of the judgments against Kofoed, to be divided between Sampson and Livers in the proportion that each plaintiff's judgment (less the $250,000 SIR) bears to the total covered loss.

### C.    Interest

Sampson and Livers neither sought nor were awarded prejudgment interest against Kofoed in the underlying action.  The court has no authority to modify the underlying judgment that does not include an award of prejudgment interest.  Further, the plaintiffs have not shown that they are entitled to prejudgment interest from the date of the court's coverage finding to the present.  Arguably, because the amount of St. Paul's coverage under the policy is capped at $5 million dollars the amount of a judgment up to that amount would be liquidated.  However, the plaintiffs' motions for judgments in excess of the verdict, as well as St. Paul's contention that punitive damages could not be covered, indicate that the amount of the potential garnishment order was still the subject of reasonable controversy.  Accordingly, the claim was not liquidated.  In light of that determination, the court need not address whether an award of prejudgment interest against a political subdivision is precluded under Nebraska law. The court finds the plaintiffs' request for prejudgment interest should be denied.

Contrary to the plaintiffs' assertions, postjudgment interest accrues on the judgments under 28 U.S.C. § 1961, not under Nebraska law.  The judgments at issue are for civil rights violations under federal question jurisdiction.  Postjudgment interest

14

has accrued, and will accrue on the judgments since the date of the judgments at the legal rate under 28 U.S.C. § 1961.

### D.    Attorney Fees

There is no dispute that the plaintiffs prevailed in the garnishment proceedings. As prevailing plaintiffs in a coverage suit under Nebraska law, they are entitled to recover attorney fees in the garnishment proceeding.  In contrast to the plaintiffs' bad faith claims, a claim for attorney fees in an action against an insurer for an order in garnishment is not a new and separate claim, rather, it is necessary to effectuate the enforcement of the court's judgment.  The court properly has ancillary jurisdiction over that claim.  The plaintiffs have submitted detailed records of the time involved and St. Paul does not challenge the amount of fees.

The court has carefully reviewed the time expended and hourly rates and finds they are reasonable.  The court is familiar with the litigation and the complexity of the issues.  The amount involved is substantial and a significant amount of time and labor was required to achieve the result.  Further, the court is familiar with the skill and expertise of counsel.  Based on these factors and the court's knowledge of reasonable rates in this legal market, the court finds the plaintiffs should recover attorney fees in the amounts requested.  St. Paul does not challenge the amount.  The court sees no reason to delay the award of fees until the resolution of any eventual appeal.  Of course, if the court's decision is reversed, the award of fees will be reversed as well.

IT IS ORDERED:

1.    Plaintiff Nicholas Sampson's motion for a partial summary judgment on the issue of bad faith (Filing No. 841 in Case No. 8:07cv155) is denied.

2.      Plaintiff Matthew Livers's motion for partial summary judgment on the issue of bad faith (Filing No. 792 in Case No. 8:08cv107) is denied.

3.      Plaintiff Nicholas Sampson's motion for attorney fees and expenses (Filing No. 835 in Case No. 8:07cv155) is granted.

4.      Attorney fees in the amount of $15,298.50, and costs in the amount of $739.52, are awarded to plaintiff Sampson from garnishee St. Paul in Case No. 8:07cv155.

5.      Plaintiff Matthew Livers's motion for attorney fees (Filing No. 787 in Case No. 8:08cv107) is granted.

6.      Attorney fees in the amount of $217,614.50 are awarded to plaintiff Livers and against garnishee St. Paul in Case No. 8:08cv107.

7.      Plaintiff Nicholas Sampson's motion for a money judgment and order of garnishment (Filing No. 838 in Case No. 8:07cv155) is granted in part and denied in part as set forth in this order.

8.      Plaintiff Matthew Livers's motion for money judgment and order of garnishment (Filing No. 789 in Case No. 8:08cv107) is granted in part and denied in part as set forth in this order.

9.      Within 14 days of the date of this order, the plaintiffs shall submit to the court calculations of each plaintiff's proportionate share of the garnishee's $5,000,000.00 liability, to be prorated between the plaintiffs in proportion to their share of the total of the original judgments combined.

10.     An order of garnishment directing garnishee St. Paul Fire and Marine Company, also known as The Saint Paul Travelers Companies,

16

Inc., to pay into the court the sum of five-million dollars ($5,000,000.00), prorated between the plaintiffs, and judgments for attorney fees and costs in favor of the plaintiffs and against garnishee St. Paul Fire and Marine Company, also known as The Saint Paul Travelers Companies, Inc., will thereafter be entered.

DATED this 30th day of November, 2016.

BY THE COURT:

/s Joseph F. Bataillon

JOSEPH F. BATAILLON
Senior United States District Judge